DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN KIDWELL HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATIE MAYES, individually and for and on behalf of dependent beneficiaries, J. M., a minor child; H. M., an minor child; M. M., a minor child; G. M., a minor child; and K. M., a minor child,<br><br>              Plaintiff,<br>v.<br><br>WINCO HOLDINGS, INC., an Idaho corporation,<br>              Defendant. | Case No. CV_____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee:    $350.00 |

COMES NOW, Plaintiff, Katie Mayes ("Plaintiff"), individually and for and on behalf of dependent beneficiaries, J. M., a minor child; H. M., a minor child; M. M., a minor child; G. M., a minor child; and K. M., a minor child, by and through her counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C., and as a cause of action against Winco Holdings, Inc., an Idaho corporation, alleges and complains as follows:

1-     COMPLAINT AND DEMAND FOR JURY TRIAL

## JURISDICTION AND VENUE

1. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the Comprehensive Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, 29 U.S.C. § 1161, *et seq.;* the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* the Idaho Human Rights Act, Idaho Code § 18-7301 and 67-5901, *et seq.*; and the Idaho Wage Claim Act, Idaho Code §§ 44-1501, *et seq.* and 45-601, *et seq.*

2. This Court has jurisdiction of the subject matter under 28 U.S.C. §§ 1331 and 1367.

3. The events giving rise to Plaintiff's claim occurred in Bonneville County, Idaho.

4. Venue is proper in the Eastern Division of the District of Idaho under 28 U.S.C. § 1391(b) and Local Civil Rule 3.1, because the claims arose in this judicial district and venue also lies properly in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

5. Plaintiff is a citizen of the United States of America who was, at all times relevant hereto, a resident of Jefferson County, Idaho.

6. Plaintiff is a single parent with several dependent children who are the dependent beneficiaries named above. One of her dependent children has a serious heart valve disorder and suffers from a severe asthma condition, both of which have required significant medical treatment. As a result of these medical conditions, this dependent child cannot be without medical coverage.

7. Defendant Winco Holdings, Inc. is an Idaho corporation doing business in Bonneville County, Idaho.

8. Defendant is a large corporation that owns a chain of grocery stores located in Washington, Idaho, Nevada, California, and Oregon.

9. At all times material to this Complaint and Demand for Jury Trial, Defendant regularly employed twenty or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of Idaho Code §§ 18-7301, 44-1501, 45-601and 67-5901 *et seq.*; 42 U.S.C. §2000e, *et seq.*; 29 U.S.C. § 1161, *et seq.,* and 29 U.S.C. § 621 *et seq.*

## GENERAL ALLEGATIONS

10. Plaintiff realleges paragraphs 1 through 9 as though fully incorporated herein.

11. On or about April 13, 1999, Plaintiff began working for Defendant as a department clerk at Defendant's Idaho Falls, Idaho store.

12. As a benefit of her employment, Defendant provided to Plaintiff medical benefits, including medical insurance. Plaintiff enrolled in such benefits for herself and the named dependent beneficiaries.

13. During the course of her employment, in approximately 2006, Plaintiff was promoted to a supervisory position and given the title Person In Charge ("PIC"). In that role, Plaintiff acted as the Lead Crewmember of Defendant's night time freight crew and had authority to hire, fire, open the store, order product, etc.

14. During her employment Plaintiff received nothing but very favorable reviews of her performance. Plaintiff had no disciplinary actions or warnings taken against her, and had never called in sick in the approximate 12 years she worked for Defendant.

15. As a part of her leadership role within the store, Plaintiff also began serving as the store Safety Committee Chief.

16. In approximately early 2006, Plaintiff asked her manager at the time, Mark Wright, if she could allow her crew to eat a cake from Defendant's bakery to boost worker morale. At the time, the freight crew was short-handed and working very hard to keep up with their work load. A particular employee on the freight crew was causing problems, creating a morale issue with the staff.

17. Mr. Wright gave Plaintiff permission to use a store cake as she felt was needed from the bakery to encourage and boost morale of her crew.

18. On a later occasion, Plaintiff again asked Mr. Wright if she could take a cake for the freight crew after they had finished an extremely long shift.  Mr. Wright told Plaintiff that she did not need to ask him about using cakes to promote morale and to "do what she needed to do." Plaintiff only allowed her crew to eat a cake on special occasions, birthdays, etc., approximately once or twice a month.

19. Managers would often take part in employee celebrations and allow a cake to be used from the bakery. Plaintiff was never told that her actions were inappropriate or against Defendant policy in any way. Plaintiff observed other crews eating cakes occasionally too.

20. Procedurally, in order to account for using the cakes, Plaintiff wrote down each cake she used for her crew in the store log book. The log book was used to keep track of products which were used for in-store purposes, such as condiments and office supplies. Mr. Wright had directed Plaintiff to account for the cakes as in-store use by logging them in the log book.

21. In January 2011, the bakery department informed Plaintiff that she should no longer use cakes other than those in the "stales cart." Plaintiff did not have to log the stale cakes in the store log because the bakery was already writing the cakes off prior to putting them in the stales cart and Plaintiff's entry of the cakes into the store log book would cause the cakes to be "written off" twice.

22. The stales cart contained cakes which were past their expiration date, no longer salable, already "written off" by Defendant, and typically donated to a local food bank or thrown away.

23. Plaintiff acknowledged the new procedure, and reported to the bakery she would leave the UPC stickers from the cakes out of the stales cart attached to the cart to let the bakery know when she had used a cake. Plaintiff explained to her crew when they celebrated birthdays or other special events that only cakes from the stales cart could be used.

24. In December 2010, Defendant's store manager, Dana Steen, took away Plaintiff's responsibility as store Safety Committee Chief and gave those responsibilities to a male employee who already held the position of Grievance Committee Chair.

25. When Plaintiff questioned Ms. Steen about her choice to remove Plaintiff from her position as Safety Committee Chief, Ms. Steen responded, "I think a man, someone more aggressive, would be better in that position."

26. On approximately July 7, 2011, one of the Plaintiff's crew members asked if they could celebrate another crew member's birthday. Plaintiff agreed and instructed employee, Nick McInelly, to take a cake from the stales cart, if there was one, up to the break room so they could celebrate a birthday during their break.

27. When Mr. McInelly did not return, Plaintiff went looking for him. Plaintiff found him just as he was leaving the building. She asked where he was going and he told her he was leaving. Plaintiff thought he quit.

28. Shortly thereafter, an unfamiliar man came out of the bread room and told Plaintiff to follow him. It was 2:00 a.m. in the morning and the man did not identify himself.

29. Plaintiff assumed he was associated with Defendant's security and followed him to the security office. The man shut the door, locked it, and began asking her questions about stealing merchandise in a very aggressive manner. He paced back and forth, grabbing his hair, and appeared unstable.

30. Plaintiff explained the practice of occasionally using the stales cakes to celebrate special events occasionally and her practice of leaving the UPC stickers on the cart. The man took Plaintiff's keys and told her to report to her manager at 10:30 a.m.

31. When Plaintiff met with her manager, she was fired for alleged "theft" of the cake taken by Mr. McInelly. Plaintiff was further pressured to sign a shoplifting agreement to pay $13.98 for the cake and $250.00 in civil penalties. Plaintiff refused to sign it.

32. Defendant asserted Mr. McInelly had taken a non-stales cart cake and discharged him for theft. Plaintiff directed him to only take a cake from the stales cart as part of their normal practice.

33. On July 8, 2011, Defendant discharged Plaintiff for the "theft" of the cake taken by Mr. McInelly.

34. Defendant refused to offer Plaintiff COBRA benefits to continue her health care coverage for her or her dependents subsequent to her termination, asserting she had been fired for gross misconduct.

35. Defendant's denial letter of her COBRA rights failed to provide Plaintiff or her dependent beneficiaries an avenue for appealing the denial.

36. Ms. Steen replaced Plaintiff with a male employee who had no freight crew experience, had only been working for Defendant for approximately three weeks, and was serving jail time for a DUI and only allowed to work during work release hours.

37. After her termination, Defendant refused to pay Plaintiff accrued vacation pay, personal time off, and a bonus day for perfect attendance (collectively "PTO").

38. Plaintiff demanded payment of her accrued PTO and an opportunity to exercise her COBRA rights on July 20, 2011. Defendant failed to respond.

39. Defendant took no disciplinary action against a similarly-situated male employee who had engaged in the same conduct as Plaintiff, allowing his freight crew to occasionally eat a cake from the stales cart. Defendant took no disciplinary actions against other employees, including managers, who had eaten cakes and other bakery items, for celebrating events or morale purposes.

40. On or about March 23, 2012, Plaintiff dually filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission ("IHRC").

41. On or about April 11, 2012, Plaintiff received her Notice of Right to Sue letter from the EEOC, a true and correct copy of which is attached hereto as Exhibit A. Plaintiff also received a Notice of Right to Sue letter from the IHRC, a true and correct copy of which is attached hereto as Exhibit B. Plaintiff has exhausted all of her administrative remedies.

## COUNT ONE
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(Gender Discrimination)

42. Plaintiff realleges paragraphs 1 through 41 as though fully incorporated herein.

43. Plaintiff is female and therefore belongs to a protected class under Title VII of the Civil Rights Act of 1964.

44. Plaintiff at all times performed her job satisfactorily.

45. Plaintiff suffered an adverse employment action when Defendant terminated her employment.

46. Plaintiff was treated differently than similarly-situated male employees.

47. Defendant subjected Plaintiff to gender discrimination.

48. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

49. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT TWO
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Gender Discrimination)

50. Plaintiff realleges paragraphs 1 through 49 as though fully incorporated herein.

51. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by subjecting Plaintiff to gender discrimination.

52. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

53. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Plaintiff's rights, for which Plaintiff is entitled to punitive damages pursuant to Idaho Code § 67-5908.

## COUNT THREE
## VIOLATION OF COBRA

54. Plaintiff realleges paragraphs 1 through 53 as though fully incorporated herein.

55. The termination of Plaintiff's employment constituted a qualifying event as that term is defined by COBRA.

56. As a result of the qualifying event, Plaintiff was entitled to a notice of COBRA continuation coverage following the termination of her employment.

57. Defendant notified Plaintiff that she was ineligible for COBRA coverage because she was fired for gross misconduct.

58. Plaintiff did not engage in any misconduct nor any other actions which would make her and the dependent beneficiaries ineligible for continuation coverage under COBRA. Plaintiff and her dependent beneficiaries were entitled to continuation of coverage under COBRA.

59. Defendant failed to provide any avenue for Plaintiff to appeal the denial of her COBRA rights.

60. Defendant's actions violated COBRA.

61. Plaintiff desired to continue health coverage and has been substantially damaged due to Defendant's refusal to allow Plaintiff to elect continuation coverage for her and/or some or all of her dependents.

62. Plaintiff and the dependent beneficiaries are entitled to remedies as provided under COBRA and 29 U.S.C. § 1132, including but not limited to, ordering Defendant to pay to Plaintiff the civil and delay penalties set forth in 29 U.S.C. § 1132.

## COUNT FOUR
## FEDERAL AND STATE WAGE CLAIM

63. Plaintiff realleges paragraphs 1 through 62 as though fully incorporated herein.

64. Defendant is an "employer" within the meaning of Idaho Code § 44-1503 and § 45-601, and the Fair Labor Standards Act, 29 U.S.C. § 203(d).

65. During the course of Plaintiff's employment with Defendant, Plaintiff accrued PTO which included vacation pay, personal days and a bonus day for perfect attendance.

66. At the time she was terminated, Plaintiff had accrued 144 hours of PTO.

67. Defendant has failed and refused to pay Plaintiff for her accrued PTO.

68. Defendant's failure to pay Plaintiff for her PTO is a violation of both state and federal wage payment laws.

69. Plaintiff is entitled to recover from Defendant the amount of unpaid wages from Plaintiff's PTO in an amount to be proven at trial and liquidated damages and/or treble damages relating thereto. In the alternative, if Plaintiff is entitled to pre-judgment interest and all unpaid wages due and owing.

## ATTORNEY'S FEES

As a further direct and proximate result of each Defendants' actions or omissions, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur costs, expert witness fees, and attorney's fees, which Defendant should

be required to pay under Idaho Code § 12-121, and 29 U.S.C. § 216(b)§ 45-615, 29 U.S.C. § 1132(g), and 42 U.S.C. § 1988(b).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues in this action triable to a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks judgment against Defendant as follows:

1. For compensatory damages as well as statutorily available damages in an amount as shall be proven at trial;

2. For liquidated, treble or punitive damages, and any civil or delay penalties;

3. For attorney's fees pursuant to statute and for the costs of this lawsuit;

4. For prejudgment interest on all amounts claimed; and

5. For such other and further relief as this Court deems just and proper.

Dated this 15th day of June, 2012.

                                               /s/
                                            DeAnne Casperson
                                            Holden, Kidwell, Hahn & Crapo, P.L.L.C.

G:\WPDATA\DC\16436 Mayes, Katie\Pldgs\Complaint.wpd:dg