DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN KIDWELL HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATIE MAYES, individually and for and on behalf of dependent beneficiaries, H. M., an minor child; M. M., a minor child; G. M., a minor child; and K. M., a minor child, and JORDAIN MAYES, beneficiary,<br><br>Plaintiffs,<br><br>v.<br><br>WINCO HOLDINGS, INC., an Idaho corporation,<br><br>Defendant. | Case No. 4:12-cv-00307-EJL<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs, Katie Mayes, individually and for and on behalf of dependent beneficiaries, H. M., a minor child; M. M., a minor child; G. M., a minor child; K. M., a minor child, and Jordain Mayes, beneficiary, (Collectively "Plaintiffs"), by and through their counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C., and as a cause of action against Winco Holdings, Inc., an Idaho corporation, allege and complain as follows:

**JURISDICTION AND VENUE**

1.  This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the Comprehensive Omnibus Budget Reconciliation Act of 1985

("COBRA"), as amended, 29 U.S.C. § 1161, *et seq.;* the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* the Idaho Human Rights Act, Idaho Code § 18-7301 and 67-5901, *et seq.*; and the Idaho Wage Claim Act, Idaho Code §§ 44-1501, *et seq.* and 45-601, *et seq.*

2. This Court has jurisdiction of the subject matter under 28 U.S.C. §§ 1331 and 1367.

3. The events giving rise to Plaintiffs' claim occurred in Bonneville County, Idaho.

4. Venue is proper in the Eastern Division of the District of Idaho under 28 U.S.C. § 1391(b) and Local Civil Rule 3.1, because the claims arose in this judicial district and venue also lies properly in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

5. Plaintiff Katie Mayes ("Mayes") is a citizen of the United States of America who was, at all times relevant hereto, a resident of Jefferson County, Idaho.

6. Mayes is a single parent with several dependent children who are the dependent beneficiaries named above. One of her dependent children has a serious heart valve disorder and suffers from a severe asthma condition, both of which have required significant medical treatment. As a result of these medical conditions, this dependent child cannot be without medical coverage.

7. Plaintiff Jordain Mayes beneficiary, is a citizen of the United States of America who was, at all times relevant hereto, a resident of Jefferson County, Idaho. Jordain Mayes is Mayes' daughter and is of the age of majority.

8. Defendant Winco Holdings, Inc. is an Idaho corporation doing business in Bonneville County, Idaho.

9. Defendant is a large corporation that owns a chain of grocery stores located in Washington, Idaho, Nevada, California, and Oregon.

10. At all times material to this Complaint and Demand for Jury Trial, Defendant regularly employed twenty or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of Idaho Code §§ 18-7301, 44-1501, 45-601and 67-5901 *et seq.*; 42 U.S.C. §2000e, *et seq.*; 29 U.S.C. § 1161, *et seq.,* and 29 U.S.C. § 621 *et seq.*

## GENERAL ALLEGATIONS

11. Plaintiffs reallege paragraphs 1 through 10 as though fully incorporated herein.

12. On or about April 13, 1999, Mayes began working for Defendant as a department clerk at Defendant's Idaho Falls, Idaho store.

13. As a benefit of her employment, Defendant provided to Mayes medical benefits, including medical insurance. Mayes enrolled in such benefits for herself, and the named dependent beneficiaries and Plaintiff Jordain Mayes.

14. During the course of her employment, in approximately 2006, Mayes was promoted to a supervisory position and given the title Person In Charge ("PIC"). In that role, Mayes acted as the Lead Crewmember of Defendant's night time freight crew and had authority to hire, fire, open the store, order product, etc.

15. During her employment Mayes received nothing but very favorable reviews of her performance. Mayes had no disciplinary actions or warnings taken against her, and had never called in sick in the approximately 12 years she worked for Defendant.

16. As a part of her leadership role within the store, Mayes also began serving as the store Safety Committee Chief.

17. In approximately early 2006, Mayes asked her manager at the time, Mark Wright, if she could allow her crew to eat a cake from Defendant's bakery to boost worker morale. At the time, the freight crew was short-handed and working very hard to keep up with their work load. A particular employee on the freight crew was causing problems, creating a morale issue with the staff.

18. Mr. Wright gave Mayes permission to use a store cake as she felt was needed from the bakery to encourage and boost morale of her crew.

19. On a later occasion, Mayes again asked Mr. Wright if she could take a cake for the freight crew after they had finished an extremely long shift. Mr. Wright told Mayes that she did not need to ask him about using cakes to promote morale and to "do what she needed to do." Mayes only allowed her crew to eat a cake on special occasions, birthdays, etc., approximately once or twice a month.

20. Managers would often take part in employee celebrations and allow a cake to be used from the bakery. Mayes was never told that her actions were inappropriate or against Defendant's policy in any way. Mayes observed other crews eating cakes occasionally too.

21. Procedurally, in order to account for using the cakes, Mayes wrote down each cake she used for her crew in the store log book. The log book was used to keep track of products which were used for in-store purposes, such as condiments and office supplies. Mr. Wright had directed Mayes to account for the cakes as in-store use by logging them in the log book.

22. In January 2011, the bakery department informed Mayes that she should no longer use cakes other than those in the "stales cart." Mayes did not have to log the stale cakes in the store log because the bakery was already writing the cakes off prior to putting them in the stales cart

and Mayes's entry of the cakes into the store log book would cause the cakes to be "written off" twice.

23. The stales cart contained cakes which were past their expiration date, no longer salable, already "written off" by Defendant, and typically donated to a local food bank or thrown away.

24. Mayes acknowledged the new procedure, and reported to the bakery she would leave the UPC stickers from the cakes out of the stales cart attached to the cart to let the bakery know when she had used a cake. Mayes explained to her crew when they celebrated birthdays or other special events that only cakes from the stales cart could be used.

25. In December 2010, Defendant's store manager, Dana Steen, took away Mayes's responsibility as store Safety Committee Chief and gave those responsibilities to a male employee who already held the position of Grievance Committee Chair.

26. When Mayes questioned Ms. Steen about her choice to remove Mayes from her position as Safety Committee Chief, Ms. Steen responded, "I think a man, someone more aggressive, would be better in that position."

27. On approximately July 7, 2011, one of the Mayes's crew members asked if they could celebrate another crew member's birthday. Mayes agreed and instructed employee, Nick McInelly, to take a cake from the stales cart, if there was one, up to the break room so they could celebrate a birthday during their break.

28. Later in their shift, Mr. McInelly disappeared from the aisle where he was stocking groceries. Mayes went looking for him. Mayes found him just as he was leaving the building. She asked where he was going and he told her he was leaving. Mayes thought he quit.

5- AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

29. Shortly thereafter, an unfamiliar man came out of the bread room and told Mayes to follow him. It was approximately 2:00 a.m. in the morning and the man did not identify himself.

30. Mayes assumed he was associated with Defendant's security and followed him to the security office. The man shut the door, locked it, and began asking her questions about stealing merchandise in a very aggressive manner.

31. Mayes explained the practice of occasionally using the stales cakes to celebrate special events occasionally and her practice of leaving the UPC stickers on the cart. The man took Mayes's keys and told her to report to her manager at 10:30 a.m.

32. When Mayes met with her manager, she was fired for alleged "theft" of the cake taken by Mr. McInelly. Mayes was further pressured to sign a shoplifting agreement to pay $13.98 for the cake and $250.00 in civil penalties. Mayes refused to sign it.

33. Defendant asserted Mr. McInelly had taken a non-stales cart cake and discharged him for theft. Mayes directed him to only take a cake from the stales cart as part of their normal practice.

34. On July 8, 2011, Defendant discharged Mayes for the "theft" of the cake taken by Mr. McInelly.

35. Defendant refused to offer Mayes COBRA benefits to continue her health care coverage for her, her dependents and Plaintiff Jordain Mayes subsequent to her termination, asserting she had been fired for gross misconduct.

36. Defendant's denial letter of her COBRA rights failed to provide Mayes, her dependent beneficiaries, or Plaintiff Jordain Mayes, with an avenue for appealing the denial.

37. Ms. Steen replaced Mayes with a male employee who had no freight crew experience, had only been working for Defendant for approximately three weeks, and was serving jail time for a DUI and only allowed to work during work release hours.

38. After her termination, Defendant refused to pay Mayes accrued vacation pay, personal time off, and a bonus day for perfect attendance (collectively "PTO").

39. Mayes demanded payment of her accrued PTO and an opportunity to exercise her COBRA rights on July 20, 2011. Defendant failed to respond.

40. Defendant took no disciplinary action against a similarly-situated male employee who had engaged in the same conduct as Mayes, allowing his freight crew to occasionally eat a cake from the stales cart. Defendant took no disciplinary actions against other employees, including managers, who had eaten cakes and other bakery items, for celebrating events or morale purposes.

41. On or about March 23, 2012, Mayes dually filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission ("IHRC").

42. On or about April 11, 2012, Mayes received her Notice of Right to Sue letter from the EEOC, a true and correct copy of which is attached hereto as Exhibit A. Mayes also received a Notice of Right to Sue letter from the IHRC, a true and correct copy of which is attached hereto as Exhibit B. Mayes has exhausted all of her administrative remedies.

## COUNT ONE
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Gender Discrimination)**

43. Mayes realleges paragraphs 1 through 42 as though fully incorporated herein.

44. Mayes is female and therefore belongs to a protected class under Title VII of the Civil Rights Act of 1964.

45. Mayes at all times performed her job satisfactorily.

46. Mayes suffered an adverse employment action when Defendant terminated her employment.

47. Mayes was treated differently than similarly-situated male employees.

48. Defendant subjected Mayes to gender discrimination.

49. As a direct and proximate result of Defendant's actions and/or failures to act, Mayes has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mayes is thereby entitled to compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

50. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Mayes's federally protected rights, for which Mayes is entitled to punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT TWO
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Gender Discrimination)

51. Mayes realleges paragraphs 1 through 50 as though fully incorporated herein.

52. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by subjecting Mayes to gender discrimination.

53. As a direct and proximate result of Defendant's actions and/or failure to act, Mayes has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mayes is thereby entitled to compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

54. Defendant's conduct was malicious and oppressive, and done with reckless disregard for

Mayes's rights, for which Mayes is entitled to punitive damages pursuant to Idaho Code § 67-5908.

## COUNT THREE
## VIOLATION OF COBRA

55. Mayes realleges paragraphs 1 through 54 as though fully incorporated herein.

56. The termination of Mayes's employment constituted a qualifying event as that term is defined by COBRA.

57. As a result of the qualifying event, Mayes was entitled to a notice of COBRA continuation coverage following the termination of her employment.

58. Defendant notified Mayes that she was ineligible for COBRA coverage because she was fired for gross misconduct.

59. Mayes did not engage in any misconduct nor any other actions which would make her and the dependent beneficiaries ineligible for continuation coverage under COBRA. Mayes, her dependent beneficiaries and Plaintiff Jordain Mayes were entitled to continuation of coverage under COBRA.

60. Defendant failed to provide any avenue for Mayes to appeal the denial of her COBRA rights.

61. Defendant's actions violated COBRA.

62. Mayes desired to continue health coverage and has been substantially damaged due to Defendant's refusal to allow Mayes to elect continuation coverage for her and/or some or all of her dependents, and Plaintiff Jordain Mayes.

63. Mayes, the dependent beneficiaries and Plaintiff Jordain Mayes are entitled to remedies as provided under COBRA and 29 U.S.C. § 1132, including but not limited to, ordering Defendant to pay to Mayes and Plaintiff Jordain Mayes the civil and delay penalties set forth in 29 U.S.C. § 1132.

## COUNT FOUR
## FEDERAL AND STATE WAGE CLAIM

64. Mayes realleges paragraphs 1 through 63 as though fully incorporated herein.

65. Defendant is an "employer" within the meaning of Idaho Code § 44-1503 and § 45-601, and the Fair Labor Standards Act, 29 U.S.C. § 203(d).

66. During the course of Mayes's employment with Defendant, Mayes accrued PTO which included vacation pay, personal days and a bonus day for perfect attendance.

67. At the time she was terminated, Mayes had accrued 144 hours of PTO.

68. Defendant has failed and refused to pay Mayes for her accrued PTO.

69. Defendant's failure to pay Mayes for her PTO is a violation of both state and federal wage payment laws.

70. Mayes is entitled to recover from Defendant the amount of unpaid wages from Mayes's PTO in an amount to be proven at trial and liquidated damages and/or treble damages relating thereto. In the alternative, if Mayes is entitled to pre-judgment interest and all unpaid wages due and owing.

## ATTORNEY'S FEES

As a further direct and proximate result of each Defendants' actions or omissions, Plaintiffs have been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur costs, expert witness fees, and attorney's fees, which Defendant should be required to pay under Idaho Code § 12-121, and 29 U.S.C. § 216(b)§ 45-615, 29 U.S.C. § 1132(g), and 42 U.S.C. § 1988(b).

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury as to all issues in this action triable to a jury.

10-    AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs seek judgment against Defendant as follows:

1. For compensatory damages as well as statutorily available damages in an amount as shall be proven at trial;

2. For liquidated, treble or punitive damages, and any civil or delay penalties;

3. For attorney's fees pursuant to statute and for the costs of this lawsuit;

4. For prejudgment interest on all amounts claimed; and

5. For such other and further relief as this Court deems just and proper.

Dated this 8th day of January, 2013.

                                                      /s/
                                            DeAnne Casperson
                                            Holden, Kidwell, Hahn & Crapo, P.L.L.C.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of January, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**DOCUMENT SERVED:**     **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**ATTORNEYS SERVED:**

Amanda K. Brailsford
A. Dean Bennett
Holland & Hart, LLP
P.O. Box 2527
Boise, ID 83701-2527
abrialsfords@hollandhart.com
adbennett@hollandhard.com

                                           /s/
                                         DeAnne Casperson, Esq.

G:\WPDATA\DC\16436 Mayes, Katie\Pldgs\Amended Complaint.wpd:dg